# THOMPSON & GREEN MACHINERY COMPANY, INC. v. M. P. SMITH CONSTRUCTION COMPANY et al.—311 S. W. (2d) 614.

Middle Section, at Nashville. December 20, 1957.

Certiorari denied by Supreme Court March 4, 1958.

Manier, Crouch & White, Nashville, for complainant.

Bailey, Ewing & Powell, Nashville, for defendant.

Frank Wade, Nashville, for Commisisoner of Dept. of Highways & Public Works.

I

SHRIVER, J.  The bill herein was filed against M. P. Smith Construction Company, a corporation, United States Fidelity and Guaranty Company, surety on the bond of said construction company, R. D. Jones, a subcontractor, and William M. Leech in his official capacity as Commissioner of Highways of the State of Tennessee, to recover sums alleged to be due from the above defendants by reason of the sale of certain materials used on a state highway project in Lewis and Maury Counties, Tennessee, and for the rental of equipment leased to the defendant, R. D. Jones, and used on said job.

Defendant, M. P. Smith Construction Company, and U. S. F. & G. Company, answered denying the material allegations of the bill, but defendant R. D. Jones failed to answer and a pro confesso was duly entered against him.

Defendant, William M. Leech, as Commissioner of Highways, filed his answer in the nature of a petition alleging that the retainage by the state amounted to $32,-136.95, but that, since there were other claimants against this retainage, the amount properly allocable to the claim in this suit was $8,271.31 which he tendered into Court and was thereupon discharged.

The case was heard on the depositions of witnesses, with exhibits and other documentary evidence, and resulted in a decree which is, in part, as follows:

"1. Complainant is entitled to recover from Defendants M. P. Smith Construction Company and its surety, United States Fidelity and Guaranty Company, the sum of $4,823.52, which represents the amount due for rentals under the contracts executed by Defendant R. D. Jones with Complainant, and the sum of $712.45 for consumable parts purchased by the said R. D. Jones, making a total of $5,535.97, together with interest from the date of the filing of the Bill in the sum of $650.31, or a total of $6,186.28;

"2. Complainant is entitled to recover from R. D. Jones the sum of $8,428.65, with interest in the sum of $1,011.44, making a total of $9,440.09, which amount should be credited with any amount which the Complainant collects from the Defendants M. P. Smith Construction Company and United States Fidelity and Guaranty Company, upon the judgment herein entered against those Corporations.

"3. The Complainant is entitled to collect the said amount of $6,186.28 from the retainage paid into the court by the Commissioner of Highways."

## II

### Assignments of Error

The cause was properly appealed to this Court and the following assignments of error filed on behalf of the defendants M. P. Smith Construction Company and the surety on its bond:

"1. The Learned Chancellor was in error by reason of his holding that the rental of machinery to a sub-contractor constitutes a claim for materials furnished and would cause the general contractor and the surety on the general contractor's bond to be liable for the rental of machinery by reason of the sub-contractor's failure to pay said rent.

"2. The Learned Chancellor was in error in refusing to hold that the rental contracts and the option to purchase privilege connected with each rental constituted in reality a title retained contract.

"3. The Learned Chancellor was in error in rendering a judgment against the appellants and in favor of the appellee in the sum of $4,706.79 for rentals on the machinery which was placed in the custody of R. D. Jones under a rent purchase agreement."

It is seen that assignments Nos. 1 and 3 raise the question whether or not the rental of equipment constitutes a lienable item under Sec. 54-519, T. C. A., which is the chief question for decision here.

## III

### The Facts

As found by the Chancellor, the essential facts are substantially as follows:

Smith Construction Company obtained a road contract from the State in August 1953 and sub-let a portion of the work to R. D. Jones. After Jones had proceeded with his part of the work for several months, he notified the construction company in July 1954 that he was unable to continue and said company thereupon completed the work.

Complainant's suit is based upon three rental contracts which it entered into with R. D. Jones, and an open account for parts and repairs. The rental contracts and payments thereon involve (1) a wagon drill machine rented by Jones from the complainant at $235 per month, plus sales tax. Rental payments were made on this machine in the amount of $1,410 plus tax and complainant seeks an additional rental of $1,962.50 plus tax. (2) Two caterpillar cable controls at $300 per month. Rental payments on these machines were paid in the amount of $2,100, and complainant seeks an additional rental of $2,400 plus tax. (3) One caterpillar bulldozer at $226 per month. Rental payment was made on this machine for one month in the sum of $230.52 and complainant claims two additional months rental in the sum of $461.02.

The open account sued on consists of a charge of $756.97 for certain parts sold to Smith Construction Company, and an account of $3,721.86 for parts, repairs and service charges against R. D. Jones. The charge against Smith Construction Company of $756.97 was paid after

suit was brought and is not now involved in this litigation.

After Jones advised Smith Construction Company that he was unable to meet his payroll and said company arranged to complete the contract, it required Jones to execute another contract, dated July 12, 1954, which is made exhibit to the testimony of Mr. Atkins. Following this, Smith Construction Company retained all of the equipment that Jones had on the job including those items rented from the complainant, the rental of which is involved here, until the completion of the job in December 1954.

The record shows that J. N. Atkins, President of M. P. Smith Construction Company, had two or three conferences with the officials of the complainant about some of this equipment, at which conferences R. D. Jones was present. A preponderance of the evidence is to the effect that the rental of the equipment here involved was discussed by Mr. Atkins with officials of the Thompson & Green Machinery Company, who agreed to let the above described machinery remain on the job to be used by the construction company in completion of the contract.

These conversations with Mr. Atkins were testified to by both Mr. Kimery, Secretary, and Mr. DeWitt Thompson, III, Vice-President and General Manager of complainant, as well as by R. D. Jones, whereas, Mr. Atkins stated that he did not remember their having taken place.

## IV

Sec. 54-519, T. C. A., provides that every general contractor who is awarded a job by the State Highway Department shall give a surety bond in amount fixed by the

Department for the full and faithful performance thereof, especially payment for all materials purchased and for all labor employed in the contemplated work.

Sec. 54-523, T. C. A., provides that the Commissioner shall hold back a sufficient sum from the contract price to pay all claims of which notice is filed with him. Under this provision the Commissioner paid into court from the retainage held by him, a sufficient sum to pay the judgment below.

The defendants take the position that the rental of equipment is not a lienable item under the foregoing statute.

In American Jurisprudence, under the title "Public Works and Contracts" it is said:

"Sec. 187. Charges for Rental of Equipment * * * Other decisions, however, have taken the view that claims for the rental of equipment are covered by bonds conditioned for payment of labor and materials. Such has been the construction placed upon Federal statutes requiring bonds of contractors for Federal public buildings and public works. The cases adopting the view that rental value of machinery hired by the contractor for use in carrying on the work is covered by the contractor's bond are said to proceed upon the theory *that it was the use of the machinery that was consumed in the work* and not the machinery itself, thus distinguishing such cases from claims for the purchase price of machinery and equipment."

In Nicks v. W. C. Baird & Co., 165 Tenn. 89, 62 S. W. (2d) 147, 148, among other things it was held:

"'* * * A claim for rental of cars, track, and equipment used at the station was sustained by the Supreme Court of the United States as a claim for material supplied. The court said: 'The equipment was used in the prosecution of the work. Material was thus supplied, although a loan serving the purpose, no purchase of it was made. The expense of loading and freight was properly included with the fixed rental as recoverable under the bond.' ''

In said case (Nicks v. W. C. Baird & Co.) the Court discussed the use of complainant's boiler which was not a part of the regular equipment of the contractor, but was engaged for a particular and special use, and concluded that the use of the boiler contributed directly to the construction involved therein, and held that the stipulated value of that use was within the protection contemplated and intended by the statute and the bond.

In Harris, Inc., v. Cincinnati, etc., Railroad Co., 198 Tenn. 339, 280 S. W. (2d) 800, a question similar to the one we have here was discussed and decided. Sec. 8002, Williams Tenn. Code, Ann., however, was the statute directly involved. This latter statute provides a lien for sub-contractors, laborers, material men and other persons, on railroad property for work done and materials furnished. Defendants herein point out that said statute is broader than Sec. 54-519, T. C. A., which is sought to be applied in the case at bar, and take the position that Harris, Inc., v. Cincinnati, etc., Railroad, supra, is not controlling in this case.

We are unable to agree with learned counsel in this respect. In the opinion in the Harris case, written by Mr. Justice Tomlinson, there is a discussion of the

whole line of cases dealing with liens of this character beginning with Luttrell & Co. v. Knoxville, etc., R. Co., 119 Tenn. 492, 105, S. W. 565, and including Southern Construction Company v. Halliburton, 149 Tenn. 319, 258 S. W. 409; Hamblen Motor Company v. Miller & Harle, 150 Tenn. 602, 266 S. W. 99; Rambo v. Naylor Engineering Company, 10 Tenn. App. 203, and Nicks v. W. C. Baird & Co., 165 Tenn. 89, 52 S. W. (2d) 147.

In Harris v. Cincinnati, N. & O. Railway Co., supra, [198 Tenn. 339, 280 S. W. (2d) 801] the Court observed:

"While there is a conflict in the decisions of the State Courts as to whether statutory liens of the character involved here embrace claims arising from the rental of machinery used on the contract, 44 A. L. R. 381 et seq., the question has been determined in the affirmative by this Court in Nicks v. W. C. Baird & Company, 165 Tenn. 89, 52 S. W. (2d) 147."

The Court further said:

"The defendant railroad and its principal contractor seek to distinguish the case at bar from Nicks v. W. C. Baird & Co. by reason of that statement in the opinion, and then these defendants say that 'it is the contractor's responsibility and the contractor's responsibility alone to furnish the equipment, machinery and tools which make up his plant.'

"This alleged distinction is not well taken, in our opinion. In the first place, the dirt moving equipment was not 'purchased' by the contractor. Only its use for a given purpose was purchased. Thus the thing purchased was consumed. In the second place, it was no more nor less the duty of the con-

tractor or subcontractor in the case at bar to furnish the dirt moving equipment than it was the duty of the contractor in Nicks v. W. C. Baird & Co. to furnish the boiler needed in the operation of the water pump.''

In the case at bar, the learned Chancellor observed in his opinion that if this were a question of first impression in Tennessee, he would have had no hesitancy in holding that such rental payments are not claims against the contractor's bond and are not covered by the statute. However, he came to the conclusion that the foregoing decisions were controlling and, thus, rendered his decree in favor of the complainant.

We concur in the conclusion of the Chancellor that these decisions are controlling and, unless and until our Supreme Court modifies, distinguishes or reverses this line of decisions we feel bound thereby.

The second assignment of error to the effect that the Chancellor should have held that the rental contracts with option to purchase privilege, constitute, in effect, retained title contracts, we think it not well taken and must be overruled.

It results that all assignments are overruled and the decree of the Chancellor is affirmed.

Affirmed.

Hickerson, J., concurs.

Felts, J., not participating.